IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT STEUDL,

      Plaintiff,

                           CASE NO.: 8:15 cv 2624 T 36TGW

-vs-

CREDIT PROTECTION
ASSOCIATION, L.P.,

      Defendant.

_____/

## COMPLAINT

      Plaintiff, ROBERT STEUDL, by and through her undersigned counsel, sues the

Defendant, CREDIT PROTECTION ASSOCIATION L.P., and in support thereof respectfully

alleges the following:

1.      Plaintiff alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et*

*seq.* ("TCPA") and the Florida Consumer Collections Practices Act, Chapter 559, *et seq.*

("FCCPA").

## INTRODUCTION

2.      The TCPA was enacted to prevent companies like CREDIT PROTECTION

ASSOCIATION L.P., from invading American citizen's privacy and prevent abusive "robo-

calls."

3.      "The TCPA is designed to protect individual consumers from receiving intrusive and

unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181,

L.Ed. 2d 881 (2012).



4.      "Senator Hollings, the TCPA's sponsor, described these calls as 'the **1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

5.      According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal

## JURISDICTION AND VENUE

6.      This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs.

7.      Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA and/or by F.S. § 47.011 and/or by 28 U.S.C. § 1332, diversity jurisdiction.

8.      Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

9.     Venue is proper in this District because the Plaintiff resides in this District (Pasco County), the phone calls were received in this District, and the Defendant transacts business in Pasco County, Florida.

### FACTUAL ALLEGATIONS

10.    Plaintiff is a natural person, and citizen of the State of Florida, residing in Pasco County, Florida, and resides in this District.

11.    Plaintiff is a "consumer" as defined in Florida Statute 559.55(2).

12.    Plaintiff is an "alleged debtor."

13.    Plaintiff is the "called party." See *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012), reh'g denied (May 25, 2012).

14.    Defendant is a "debt collector" as defined by Florida Statute §559.55(6).  Defendant sought to collect a debt from Plaintiff.

15.    The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute §559.55(1).

16.    Defendant is corporation with a principal place of business and/or office for transacting its business located at 13355 Noel Rd., Suite 2100, Dallas, Texas, 75380.

17.    Defendant has a registered agent in Florida: CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

18.    The conduct of Defendant which gives rise to the cause of action herein alleged occurred in this District, Pasco County, Florida, by the Defendant's placing of illegal calls to Pasco County, Florida.

19.    Defendant, at all material times, was attempting to collect on a vehicle loan account, (hereinafter the "subject account"), which was issued and serviced by Defendant.

3

20.     Defendant knowingly and/or willfully harassed and abused Plaintiff on a constant basis by calling Plaintiff's cellular telephone number up to three (3) times a day from approximately March 15, 2015 through the filing of this complaint, with such frequency as can reasonably be expected to harass, all in an effort related to the collection of the subject account.

21.     Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that she heard a pause before being connected to Defendant's representative. Plaintiff will also testify that some, if not all of the voice-message recordings she received on his cell phone were pre-recorded.

22.     All calls to the Plaintiff cell phone were made without express consent. Plaintiff had a conversation with Defendant's representative in March, 2015 during which he asked the representative to stop calling him on his cellular telephone number. Furthermore, Plaintiff informed Defendant's representative that the person they were looking for could not be reached at that number. Each of the autodialer calls the Defendant made to Plaintiff's cellular telephone number after March, 2015, was done so after he had revoked any "alleged" consent and without the "prior express consent" of the Plaintiff.

23.     Plaintiff is the subscriber, regular user and carrier of the cellular telephone number, (727) ***-2833, and was the called party and recipient of Defendant's autodialer calls.

24.     The autodialer calls from Defendant came from the telephone numbers including but not limited to 844-335-5695, 844-335-5696, 844-335-5701, and 844-335-5702 and when that

4

number is called, an automated voice answers and identifies itself as "CREDIT PROTECTION ASSOCIATION."

25.    After receiving numerous autodialer calls since March, 2015 to his cellular telephone number from Defendant, Plaintiff spoke to a representative of Defendant in March, 2015 and told Defendant's representative to "stop calling."

26.    Despite Plaintiff informing Defendant to stop calling, the Defendant's autodialer calls to Plaintiff's cellular phone continued.

27.    The autodialer calls from Defendant continued, at times, three (3) times a day from March, 2015, through the filing of this complaint. Defendant has, or should be in possession and/or control of call logs, account notes, autodialer reports and/or other records that detail the exact number of all autodialer calls made to Plaintiff.

28.    The Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, and to make autodialer calls just as they did to Plaintiff's cellular telephone in this case, with no way for the called party and recipient of the calls, or the Defendant, to permit the removal of the incorrect number.

29.    Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of autodialer calls, well-beyond March, 2015 when Plaintiff first advised Defendant they had contacted the wrong person and to stop calling.

30.    Defendant's corporate policy is structured as to continue to call individuals like the Plaintiff, despite the individual, like Plaintiff, advising Defendant to stop calling.

31.    Defendant's corporate policy provided no means for the Plaintiff to have his cellular number removed from the call list, or otherwise permit the cessation of and/or suppression of calls to Plaintiff.

32.   Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this complaint.

33.   Defendant has numerous complaints against them across the country asserting that their automatic telephone dialing system continues to call the wrong people or people who have revoked consent to be called.

34.   Defendant knowingly employed methods and/or has a corporate policy designed to harass and abuse individuals and has set up their autodialer in a manner which makes it virtually impossible for the autodialer calls to stop.

35.   Defendant knowingly employed methods that did not permit the cessation of or suppression of autodialer calls to Plaintiff's cellular telephone.

36.   Due to Defendant's constant autodialer calls and demands for payment Plaintiff has suffered statutory and actual damages in the form of emotional distress, frustration, worry, anger, and/or loss of capacity to enjoy life.

## COUNT I
### (Violation of the TCPA)

37.   Plaintiff re-alleges and incorporates Paragraphs one (1) through thirty-seven (37) above as if fully stated herein.

38.   None of Defendant's autodialer calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

39.   Defendant violated the TCPA, with respect to all of its autodialer calls made to Plaintiff's cellular telephone number after Plaintiff revoked consent to be called and without Plaintiff's prior express consent as he never provided Defendant with her telephone number or consent to contact him.

6

40.     The Defendant willfully and/or knowingly violated the TCPA, especially for each of the autodialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant in March, 2015 that they were contacting the wrong person and when Plaintiff verbally withdrew, revoked, and/or terminated any alleged consent Defendant believed it had to contact him.

41.     Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

## COUNT II
### (Violation of the FCCPA)

42.     Plaintiff incorporates Paragraphs one (1) through forty-one (41).

43.     At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute §559.72.

44.     Defendant has violated Florida Statute §559.72(7) by willfully communicating with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family. Defendant continued to call Plaintiff without Plaintiff's prior express consent and after Plaintiff informed Defendant to stop calling. Defendant called Plaintiff up to three times daily which is a frequency that can be reasonably expected to harass.

45.     Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

        **WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, CREDIT PROTECTION ASSOCIATION L.P., for statutory

7

damages, actual damages, treble damages, costs, interest, and any other such relief the court may deem just and proper.

Respectfully submitted,

Octavio "Tav" Gomez, Esquire
Morgan & Morgan, Tampa, P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 222-4725
Florida Bar #: 338620
Attorney for Plaintiff
TGomez@ForThePeople.com

8